O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY, a Delaware corporation, 3M UNITEK CORPORATION, a California corporation, and 3M COMPANY, a Delaware corporation, | ) ) ) ) ) ) ) | CV 10-00521-RSWL (JCx) **ORDER Re: Plaintiffs' Motion to Enforce the Consent Judgment [16]** |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| TP ORTHODONTICS, INC., an Indiana corporation, | ) ) ) | |
| Defendant. | ) ) ) ) | |

On January 4, 2011, Plaintiffs' Motion to Enforce the Consent Judgment [16] came on for regular calendar before this Court.  The Court, having reviewed all papers submitted pertaining to this Motion and having considered all arguments presented to the Court, **NOW FINDS AND RULES AS FOLLOWS:**

The Court hereby **DENIES** Plaintiffs' Motion to Enforce the Consent Judgment Order.

1

I. <u>Background</u>

On September 20, 1994, Plaintiffs 3M Innovative Properties Company, 3M Unitek Corporation, and 3M Company (hereinafter, "Plaintiffs") were issued United States Patent No. 5,348,154 (hereinafter, "the 154 Patent"). The 154 Patent is directed to orthodontic or dental appliances that are coated with curable or tacky material and the packaging of these appliances. The 154 Patent also discloses a kit with a tray-based package designed to provide organization and storage of sets of these appliances.

Claim 1 of the 154 Patent is comprised of four elements, and provides as follows: an article comprising a) "a tray having at least two holes," b) "at least two substrates each having only one well with an opening only at the top thereof and a top surface that is removably retained in the hole of the tray," c) "a lid releasably attached to the top surface thereof," and d) "an orthodontic appliance having a tacky substance on an exterior surface" positioned in such a way that it does not separate from the appliance upon removal from the well. [Pls.' Corrected Compl. Ex. A.] Elements a and b are specifically at issue here in this Motion.

On January 25, 2010, Plaintiffs filed a Complaint against Defendant TP Orthodontics, Inc, (hereinafter, "Defendant") alleging a cause of action for Patent Infringement [1]. Plaintiffs filed a Corrected

1  Complaint for Patent Infringement on January 26, 2010,
2  claiming that Defendant's product, the Invu with Readi-
3  Base Pre-Applied Adhesive kit (hereinafter, "Invu
4  Kit"), infringed on one or more claims of the 154
5  Patent [6].
6      On May 7, 2010, the Parties filed a Stipulation to
7  Entry of Consent Judgment [13].  This Stipulation
8  stated that the Parties had agreed to settle all claims
9  in this Action, and requested that the Court enter the
10 Consent Judgment Order filed with this Stipulation.
11     On May 13, 2010 this Court entered the Consent
12 Judgment Order [14].  In this Order, the Court stated
13 that Plaintiffs had exclusive license in the 154
14 Patent, and that Defendant acknowledged and agreed it
15 had infringed on the 154 Patent in manufacturing,
16 using, offering for sale and selling the Invu Kit as
17 articles that incorporate every element of claims of
18 the 154 Patent, in violation of 35 U.S.C. § 271.
19 [Consent Judgment Order 2.]  Accordingly, the Court
20 issued a permanent injunction against Defendant,
21 enjoining Defendant from making, using, offering to
22 sell, selling or importing into the United States any
23 articles that infringe on the 154 Patent. [Id.]  This
24 Court retained jurisdiction for purposes of enforcing
25 the terms of the Consent Judgment and Settlement
26 Agreement. [Id.]
27     After this Order was issued, Defendant began
28 marketing and selling a new, modified Invu Kit

3

(hereinafter, "current Invu Kit") that is thermoformed from a sheet of plastic and now consists of two elongated, open-ended channels or slots. [Decl. Intagliata ¶¶ 3,9.]  Each channel includes a bottom wall and two upstanding walls.  According to Defendant, one of these walls includes "pod positioning ridges to assist in locating each pod according to the prescribed tooth position," and the bottom of each hole contains a layer of sticky material that assists in holding an inserted pod in place. [Def.'s Opp. 5-6]

On December 3, 2010, Plaintiffs filed this present Motion, arguing the modified device still infringes on the 154 Patent [16].

II. <u>Analysis</u>

A. <u>Legal Standard</u>

If a patent owner is "confronted with another possible infringement by [the enjoined infringer] in the form of a modified device," the patent owner can "seek to invoke the power of the court to punish the adjudged infringer for contempt in violating the court's injunctive order."  <u>KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.</u>, 776 F.2d 1522, 1524 (Fed. Cir. 1985).

However, the Federal Circuit has held that before the district court can make a finding that the party is in "contempt of an injunction in a patent infringement case, [the court] must address two separate questions." <u>Abbott Labs. v. TorPharm, Inc.</u>, 503 F.3d 1372, 1380

1  (Fed. Cir. 2007)(citing KSM Fastening Sys., Inc., 776

2  F.2d at 1532).

3      First, the court must determine "whether a contempt

4  hearing is an appropriate forum in which to determine

5  whether a redesigned device infringes, or whether the

6  issue of infringement should be resolved in a separate

7  infringement action." Additive Controls & Measurement

8  Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1349 (Fed.

9  Cir. 1998). In order to do so, the court must compare

10 the accused, modified device with the original,

11 infringing device in light of the patent claims at issue

12 in the action. See Tivo Inc. v. Dish Network Corp., 640

13 F. Supp. 2d 853, 869 (E.D. Tex. 2009).

14     A contempt hearing is only appropriate if the

15 differences between these two devices are merely

16 colorable. Additive Controls & Measurement Sys., Inc.,

17 154 F.3d at 1349. Differences are more than colorable

18 when there are "substantial open issue[s] with

19 respect to [the modified device's] infringement." KSM

20 Fastening Sys., Inc., 776 F.2d at 1532. When this is

21 the case, "the presence of such disputed issues creates

22 fair doubt that the decree has been violated," and a

23 determination as to whether a party is in contempt due

24 to the modified device's possible infringement is

25 inappropriate. Id. However, if the court finds that

26 the modified device represents no more than a colorable

27 change from the infringing device, contempt proceedings

28 are appropriate and the court can proceed to the second

1  step: the contempt hearing itself.  Id.

2      The second step requires a comparison between the
3  modified device and the patent claims to determine if
4  those products do in fact infringe on the original,
5  patented device.  See id.  The patent owner, as the
6  movant, "must show by clear and convincing evidence that
7  the modified device falls within the admitted or
8  adjudicated scope of the claims and is, therefore, an
9  infringement." Arbek Mfg., Inc. v. Moazzam, 55 F.3d
10 1567, 1569 (Fed. Cir. 1995).  However, the patent owner
11 must show that the modified device contains "merely
12 'colorable' changes of the infringing [device]." Id. at
13 1525.  Therefore, "[e]ven if the [modified] product may
14 infringe the patent, as long as it is more than
15 "colorably different" the infringement should not amount
16 to a contempt nor should it be tested in contempt
17 proceedings." Siebring v. Hansen, 346 F.2d 474, 477
18 (8th Cir. 1965).

19      B.  Plaintiffs' Motion

20      Plaintiffs argue Defendant is in violation of the
21 Consent Judgment Order because Defendant's current Invu
22 Kit, though modified from the original, infringing Invu
23 Kit, still infringes on each element of Claim 1 of the
24 154 Patent.  Specifically, Plaintiffs assert that the
25 channels in the current Kit still constitute "holes"
26 within the meaning of Claim 1 of the 154 Patent, and
27 that the substrates or pods in the current Kit are still
28 removably retained by these "holes."  Plaintiffs contend

1 Defendant is therefore in violation of the permanent
2 injunction issued in the Consent Judgment Order, and
3 request that the Court find Defendant to be in civil
4 contempt as a result of this violation.

5 　　　Defendant in turn contends that the current Invu
6 Kit does not violate the Consent Judgment Order, because
7 it is structurally and functionally distinct from the
8 first, infringing Invu Kit.  Defendant argues that the
9 current Invu Kit does not infringe on every element of
10 Claim 1 of the 154 Patent, as it does not include any
11 "holes" because the two elongated open-ended channels
12 with ridges on the sides cannot be considered "holes"
13 within the meaning of Claim 1 of the Patent.  Defendant
14 also argues that the substrates or pods in the current
15 Invu Kit are not removably retained by any sort of hole
16 in violation of Claim 1 of the 154 Patent, as the
17 substrates or pods in the current Invu Kit are now held
18 in place by an adhesive that is applied to the bottom of
19 the channel in order to aid in the retention of the
20 substrates or pods.

21 　　　The Court finds that based on the test set forth by
22 the Federal Circuit in KSM Fastening Systems, Inc. v.
23 H.A. Jones Company, Inc., this Motion is not the
24 appropriate forum in which to determine whether
25 Defendant's current Invu Kit infringes on Plaintiffs'
26 154 Patent.

27 　　　When applying the first step of the KSM Fastening
28 Systems, Inc., test, a comparison of the current Invu

1  Kit with the original, infringing Invu Kit in light of
2  the Claim 1 elements of the 154 Patent supports a
3  finding here that the differences between these two
4  products are more than colorable, as "substantial open
5  issues" exist with respect to whether the current Invu
6  Kit infringes on the 154 Patent.  KSM Fastening Sys.,
7  Inc., 776 F.2d at 1532.  As such, this type of a
8  proceeding is inappropriate, and the issue of
9  Defendant's alleged infringement with respect to the
10 current Invu Kit should be resolved in a separate
11 infringement action.

12     Specifically, Defendant has redesigned its product
13 so that the current Invu Kit now has elongated, shallow
14 channels that run the length of the tray instead of the
15 square cut outs or holes that were present in the
16 original, infringing Invu Kit.  The current Invu Kit
17 also now contains adhesive on the bottom of these
18 channels to keep the substrates or pods in place in an
19 attempt to avoid the substrates or pods from being
20 removably retained in the current Invu Kit.  Although
21 some similarities still exist between the two Kits, the
22 fact that Defendant redesigned the tray to contain these
23 different elements supports a finding here that the
24 differences between the two Kits are more than colorable
25 and raise substantial open issues of infringement.  See
26 Arbek Mfg., Inc., 55 F.3d at 1570.

27     Moreover, the Court finds that expert and other
28 testimony would be helpful here in determining whether

1  the current Invu Kit infringes on all the elements of
2  Claim 1 of the 154 Patent, as it is unclear at this
3  juncture whether the current Invu Kit is a tray having
4  at least two "holes" with the susbtrates or pods being
5  removably retained in one of these alleged holes in the
6  tray.  <u>See</u> <u>id.</u> (noting that "[t]he modifying party
7  generally deserves the opportunity to litigate the
8  infringement question at a new trial, particularly if
9  expert and other testimony subject to cross-examination
10 would be helpful or necessary.")  Neither Party has
11 submitted sufficient evidence or expert testimony to
12 enable the Court to make a determination as to these
13 issues, and therefore factual issues remain as to
14 whether Defendant's current Invu Kit infringes on the
15 154 Patent.  <u>See</u> <u>Liquid Dynamics Corp. v. Vaughn Co.,</u>
16 <u>Inc.</u>, 2008 WL 4643428, *3-5 (N.D. Ill. 2008).
17      Accordingly, the differences between the current
18 Invu Kit and the original, infringing Invu Kit are more
19 than colorable here, as substantial open issues of
20 infringement are present.  Therefore, the Court finds
21 that this Motion is not the appropriate forum in which
22 to determine whether Defendant's current Invu Kit
23 infringes on the 154 Patent, in violation of the Consent
24 Judgment Order.
25 ///
26 ///
27 ///
28 ///

III.     <u>Conclusion</u>

     For the reasons heretofore stated, the Court **DENIES** Plaintiffs' Motion to Enforce the Consent Judgment Order.

**IT IS SO ORDERED.**

DATED:   January 11, 2011

RONALD S.W. LEW
_____

**HONORABLE RONALD S.W. LEW**

Senior, U.S. District Court Judge